**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO**

| | | |
|---|---|---|
| MICHAEL CADORETTE, individually and on behalf of all others similarly situated, | ) ) ) | Civil Action No. |
| Plaintiff, | ) ) | |
| v. | ) ) | |
| GREAT DAY IMPROVEMENTS, LLC, | ) ) | |
| Defendant. | ) ) | |

**COMPLAINT FOR FEDERAL AND STATE WAGE VIOLATIONS**

Plaintiff Michael Cadorette ("Plaintiff" or "Cadorette"), through his undersigned counsel, individually and on behalf of all others similarly situated, files this federal and state wage violation Complaint against Defendant Great Day Improvements, LLC ("Great Day" or "Defendant"). The following allegations are based on personal knowledge as to Plaintiff's own conduct and on information and belief as to the acts of others.

**PRELIMINARY STATEMENT**

1. This is an action brought pursuant to the Fair Labor Standards Act of 1938, 29 U.S.C. § 201, *et seq.* ("FLSA") seeking payment of unpaid wages. Plaintiff, on behalf of himself and others similarly situated, also seeks liquidated damages for the failure to pay overtime wages, as well as attorneys' fees and costs.

2. Plaintiff alleges that he and other similarly situated installation and repair workers were knowingly and improperly classified by Great Day as independent contractors, and, as a result, did not receive compensation for hours worked in excess of forty (40) in a workweek in violation of the FLSA.

1

3. Plaintiff brings this lawsuit pursuant to 29 U.S.C. § 216(b) behalf of himself and the following similarly situated Putative Plaintiffs:

All individuals who worked for Great Day performing home installation and improvement services in the United States from July 16, 2023 to the present and were classified as independent contractors (the "FLSA Group").

4. Plaintiff seeks Court Supervised Notice of his FLSA claims pursuant to 29 U.S.C. § 216(b).

5. Plaintiff also brings an individual claim, pursuant to Va. Code § 40.1-28.7:7 for Defendant's actions in misclassifying him as an independent contractor, and under Va. Code § 40.1-29.2, for Defendant's failure to pay him overtime compensation for hours worked in excess of 40 a week.

### JURISDICTION AND VENUE

6. This Court has jurisdiction over Plaintiff's FLSA claims under 29 U.S.C. § 216(b) and 28 U.S.C. § 1331. This Court has supplemental jurisdiction over Plaintiff's claims under Virginia law pursuant to 28 U.S.C. § 1367 because these claims are so related to the claims over which this Court possesses original jurisdiction that they form part of the same case or controversy under Article III of the Constitution.

7. Venue in this Court is proper pursuant to 28 U.S.C. § 1391, because Defendant has its headquarters in Twinsburg, Ohio, in this judicial district, and a substantial part of the events giving rise to Plaintiff's claims took place in this district.

### PARTIES

8. Great Day Improvements, LLC ("Great Day") is an foreign limited liability company, licensed and registered to do business in Ohio which provides various home installations and improvements across the United States. Great Day has its headquarters at 2500 E Enterprise

2

Pkwy, Twinsburg, Ohio 44087. Great Day can be served through its Registered Agent, CT Corporation System, 4400 Easton Commons, Suite 125, Columbus, OH 43219.

9.     Defendant Great Day engages Plaintiff and Putative Plaintiffs to work on Great Day's various home installation and improvement projects throughout the United States. Upon information and belief, Great Day has employed hundreds of workers—including Plaintiff and the Putative Plaintiffs – during the statutory period.

10.     Defendant Great Day operates under multiple Trade names, including Apex Energy Solutions, Leafguard, Champion Windows, the Bath Authority, Universal Windows Direct, Patio Enclosures.

11.     Great Day offers a variety of home improvement services, including window, door, patio, sunroom, roof, gutter, and bathtub installations.

12.     To perform these services, Great day utilizes individuals like Plaintiff and the collective action members, whom it classifies as independent contractors.

13.     Plaintiff Michael Cadorette ("Cadorette") is an individual residing in Atkinson, New Hampshire.

14.     Plaintiff Cadorette worked for Great Day as a carpenter, performing patio and sunroom installations for Great day's clients between approximately February 2025 and November 2025. During this time Cadorette was classified by Great Day as an independent contractor.

15.     Pursuant to 29 U.S.C. § 216(b), Cadorette has consented in writing to participate in this action. *See* Ex. A.

16.     Great Day employs individuals engaged in commerce or in the production of goods for commerce and/or handling, selling, or otherwise working on goods or materials that have been

3

moved in or produced in commerce by any person, as required by 29 U.S.C. §§ 206-207.

17.  Great Day's annual gross volume of sales made or business done exceeds $500,000.

**FACTS**

18.  Great Day provides home installation and improvement services to customers throughout the United States. Great Day describes itself as "your home renovation partner, for life" and prominently advertises its home improvement services on its website.[1]

19.  Great Day employs individuals, such as Plaintiff and Collective Action Members, who perform such home installation and improvement services. These include such services as patio and sunroom installations, window and door, installations, bathtub installations, and roof and gutter installations.

20.  Great Day's financial results are significantly driven by the number of individuals performing installation and improvement services, and the fees that Great Day charges the customers for these services.

21.  Plaintiff, along with dozens of the Putative Plaintiffs, worked for Great Day home installations and improvement projects in Virginia and neighboring states.

22.  Plaintiff and the Putative Plaintiffs were classified by Great Day as independent contractors.

23.  Plaintiff's assigned projects were patio and sunroom installations. Plaintiff worked on these installation projects for several days to two weeks at a time.

24.  On a typical week, Plaintiff Cadorette worked 50 or more hours to complete his projects for Great Day.

---

[1] https://www.greatdayimprovements.com/ (last visited June 22, 2026).

4

25.     Although Plaintiff routinely worked 50 hours a week, he was paid a flat rate, determined by Great Day, for each project he was assigned, and did not receive overtime compensation for hours worked in excess of 40 a week.

**Plaintiff and the Putative Plaintiffs are Employees of Great Day as a Matter of Law**

26.     The work performed by Plaintiff and the Putative Plaintiffs is an integral part of Great Day's business. Great Day is in the business of providing home installation and improvement services. Plaintiff and the Putative Plaintiffs provide these very services – they install items such as patios, decks, roofs, bathtubs, windows and sunrooms for Great Day's customers.

27.     Plaintiff's and the Putative Plaintiffs' duties do not involve managerial work. They follow the hands-on training and written instructions provided to them by Great Day in performing their work.

28.     Plaintiff and the Putative Plaintiffs do not make any significant relative investments in relation to their work with Great Day. Great Day provides Plaintiff and the Putative Plaintiffs with initial training and the equipment required to perform the functions of their work.

29.     Plaintiff and the Putative Plaintiffs have little or no opportunity to experience a profit or loss related to their employment. Great Day pays Plaintiff and the Putative Plaintiffs a set, flat rate for each project. Plaintiff and Collective Action Members' income from their work is limited to this flat rate, which is set by Great Day, and which they cannot negotiate.

30.     Plaintiff's and the Putative Plaintiffs' work does not require special skills, judgment or initiative. While Plaintiff and the Putative Plaintiffs have basic carpentry skills, Great Day provides hands-on training, along with written instructions, to Plaintiff and the Putative Plaintiffs for how to perform their assigned patio and sunroom builds.

5

31. Plaintiff and the Putative Plaintiffs are economically dependent on Great Day. Plaintiff and the Putative Plaintiffs are entirely dependent upon Great Day for their business, as they work for Great Day full-time, and have limited ability to perform services for any other company during their time working for Great Day.

32. Plaintiff and the Putative Plaintiffs are not engaged in an independently established trade, occupation, profession or business. Plaintiff and the Putative Plaintiffs work exclusively for Great Day, full-time, for stretches of months at a time. Their schedule, and the duration of their work assignments, is determined by Great Day.

33. Upon information and belief, Great Day also utilizes W-2 employees who perform substantially the same work as Plaintiff and the Putative Plaintiffs.

34. Plaintiff and the Putative Plaintiffs have little or no authority to refuse or negotiate Great Day's rules and policies; they must comply or risk discipline and/or termination.

35. Great Day instructs Plaintiff and the Putative Plaintiffs concerning how to do their work and Great Day dictates the details of the performance of their jobs. For example:

    a. Great Day, not Plaintiff or the Putative Plaintiffs, conducts all of the billing and invoicing to Great Day's clients for the work. Great Day bills customers directly;

    b. Plaintiff and the Putative Plaintiffs have no control over what prices to charge for their work, or the scheduling of their work assignments. All negotiations over the cost of the work are done directly between Great Day and the customer;

    c. Great Day requires Plaintiff and the Putative Plaintiffs to work the entire project from inception to conclusion;

6

d.  Great Day provides the initial training needed for Plaintiff and the Putative Plaintiffs to perform their work; and

e.  Great Day requires Plaintiff and the Putative Plaintiffs to perform in accordance with Great Day's policies, manuals, standard operating procedures and the third-party client's requirements.

36.  Plaintiff and the Putative Plaintiffs often work approximately ten (10) hours per day, five (5) days per week for Great Day.

37.  Plaintiff and the Putative Plaintiffs have to request Great Day's approval for time off. Great Day has the discretion to grant or deny such requests.

**Great Day Willfully Violated the FLSA**

38.  Great Day had no reasonable basis to believe that Plaintiff and the Putative Plaintiffs were independent contractors exempt from the requirements of the FLSA. Rather, Great day either knew or acted with reckless disregard of clearly applicable FLSA provisions in classifying Plaintiff and the Putative Plaintiffs as independent contractors. Such willfulness is demonstrated by, or may be reasonably inferred from, Defendant's actions and/or failures to act, including the following:

a.  At all times relevant hereto, Great Day was aware of the nature and duration of Plaintiff's and the Putative Plaintiffs' work assignments, and knew, or should have known, that they regularly worked in excess of 40 hours per week;

b.  At all times relevant hereto, Great Day knew that it did not pay Plaintiff and the Putative Plaintiffs 1.5 times their regular pay rate for hours worked in excess of forty (40) hours per week;

c.  As evidenced by its own website and training materials, at all times relevant hereto,

Great Day was aware of the nature of the work performed by its installations and repair workers, and the rules and requirements they had to follow.

d. Great Day lacked any reasonable or good faith basis to believe that its installation and repair workers were exempt from the overtime requirements of the FLSA. Rather, Great Day deliberately misclassified these individuals as independent contractors in order to avoid paying them overtime compensation to which they were entitled;

e. At all times relevant hereto, Great Day was aware that it would (and, in fact did) benefit financially by failing to pay Plaintiff and the Putative Plaintiffs 1.5 times their regular pay rate for hours worked in excess of forty (40) hours per week; and

f. Thus, Great Day had (and has) a strong financial motive to violate the requirements of the FLSA by misclassifying its installation and repair workers as independent contractors.

39. Based upon the foregoing, Great Day was cognizant that, or recklessly disregarded whether, its conduct violated the FLSA.

## COLLECTIVE ACTION ALLEGATIONS UNDER THE FLSA

40. Plaintiff brings this Count I of this lawsuit pursuant to 29 U.S.C. § 216(b) on behalf of the FLSA Group defined above.

41. Plaintiff desires to pursue his FLSA claims on behalf of all individuals who join this action pursuant to 29 U.S.C. § 216(b).

42. More than a "strong likelihood' exists that Plaintiff and the FLSA Group are "similarly situated" as that term is used in 29 U.S.C. § 216(b) because, *inter alia*, all such individuals have been subject to Great Day's common business and compensation practices as

8

described herein, and, as a result of such practices, have not been paid wages, including the legally mandated overtime compensation for hours worked over forty (40) during the workweek. Resolution of this action requires inquiry into common facts, including, *inter alia*, Great Day's common misclassification, compensation and payroll practices.

43. The FLSA requires non-exempt employees to be compensated at a rate of 1.5 times the regular hourly rate for all hours worked over 40 in a week.

44. Great Day misclassified Plaintiff and the FLSA Group as independent contractors, and, as a result, failed to provide them overtime compensation for hours worked in excess of 40 a week.

45. The similarly situated employees are known to Great Day, are readily identifiable, and can easily be located through Great Day's business and human resources records.

46. Great Day employs many FLSA Group Members throughout the United States. These similarly situated employees may be readily notified of this action through email, text message, U.S. Mail, and/or other means, and allowed to opt in to this action pursuant to 29 U.S.C. § 216(b), for the purpose of collectively adjudicating their claims for overtime compensation, liquidated damages (or, alternatively, interest) and attorneys' fees and costs under the FLSA.

## COUNT I
### FLSA – Overtime Compensation
### (On Behalf of Plaintiff and the FLSA Group)

47. All previous paragraphs are incorporated as though fully set forth herein.

48. The FLSA defines "employer" broadly to include "any person acting directly or indirectly in the interest of an employer in relation to an employee. . . ." 29 U.S.C. § 203(d).

49. Great Day is subject to the wage requirements of the FLSA, because Great Day is an "employer" under 29 U.S.C. § 203(d).

9

50. At all relevant times, Great Day has been an "employer" engaged in interstate commerce and/or in the production of goods for commerce, within the meaning of the FLSA, 29 U.S.C. § 203.

51. During all relevant times, Plaintiff and the FLSA Group have been covered employees entitled to the above-described FLSA protections. *See* 29 U.S.C. § 203(e).

52. Plaintiff and the FLSA Group are not exempt from the requirements of the FLSA.

53. Plaintiff and the FLSA Group are entitled to be paid overtime compensation for all hours worked over forty (40) in a workweek pursuant to 29 U.S.C. § 207(a)(1).

54. Great Day, pursuant to its policies and practices, failed and refused to pay overtime compensation to Plaintiff and the FLSA Group for their overtime hours worked by misclassifying Plaintiffs and the FLSA Group as independent contractors.

55. Great Day knowingly failed to compensate Plaintiff and the FLSA Group at a rate of 1.5 times their regular hourly wage for hours worked in excess of forty (40) hours per week, in violation of 29 U.S.C. § 207(a)(1).

56. In violating the FLSA, Great Day acted willfully and with reckless disregard of clearly applicable FLSA provisions.

57. In violating the FLSA, on information and belief, Great Day did not have any good faith basis to rely on any legal opinion or advice to the contrary.

## COUNT II
### Violation of the Virginia Misclassification Statute
### (On Behalf of Plaintiff)

58. Plaintiff restates the above paragraphs as if fully set forth herein.

59. Defendant is an employer within the meaning of the Virginia Misclassification Statute, § 40.1-28.7:7.

60.     Plaintiff is an employee within the meaning of Virginia Misclassification Statute, § 40.1-28.7:7, since he performed work In Viginia for a Virginia employer.

61.     Defendant has misclassified Plaintiff as an independent contractor, and has withheld and diverted Plaintiff's wages, including overtime compensation owed, in violation of § 40.1-28.7:7.

62.     Pursuant to § 40.1-28.7:7, Plaintiff is entitled to recover any wages, salary, employment benefits, including expenses incurred by them that would otherwise have been covered by insurance, any other compensation lost, and reasonable attorneys' fees and costs.

**COUNT III**
**Violation of Virginia Wage Payment Act- Overtime**
**(On Behalf of Plaintiff)**

63.     Plaintiff restates the above allegations as if fully set forth herein at length.

64.     VA Code § 40.1-29 provides that any employer that violates the overtime pay requirements of the federal Fair Labor Standards Act of 1938, 29 U.S.C. § 201 et seq., as amended, and any regulations, guidance, or rules adopted pursuant to the overtime pay provisions of such federal act or any related governing case law shall be liable to the employee for the applicable remedies, damages, or other relief available in an action brought pursuant to subsection K of Va. Code § 40.1-29.

65.     Plaintiff is entitled to recover his overtime wages owed, an additional equal amount as liquidated damages, prejudgment interest, and reasonable attorney fees and costs.

**PRAYER FOR RELIEF**

WHEREFORE Plaintiff seeks the following relief on behalf of himself and the FLSA Collective:

    a.  An order permitting this litigation to proceed as a collective action pursuant to 29

U.S.C. § 216(b);

b.  Prompt notice, pursuant to 29 U.S.C. § 216(b), of this litigation to all potential members of the FLSA Collective;

c.  Back pay damages (including unpaid overtime compensation and unpaid wages) and prejudgment interest to the fullest extent permitted under the law;

d.  Liquidated damages to the fullest extent permitted under the law;

e.  Litigation costs, expenses, and attorneys' fees to the fullest extent permitted under the law; and

f.  Such other and further relief as this Court deems just and proper.


Dated: July 16, 2026                    Respectfully submitted,

MICHAEL CADORETTE, individually and on behalf of others similarly situated,

/s/*Robert E. DeRose*_____
Robert E. DeRose(OH Bar No. 0055214)
**Barkan Meizlish DeRose Cox, LLP**
4200 Regent Street, Suite 210
Columbus, OH 43219
(P) 614-221-4221
(F) 614-744-2300
bderose@barkanmeizlish.com

Olena Savytska (*pro hac vice anticipated*)
Harold Lichten (*pro hac vice anticipated*)
**LICHTEN & LISS-RIORDAN, P.C**.
729 Boylston St., Suite 2000
Boston, MA 02116
Telephone: (617) 994-5800
Facsimile: (617) 994-5801
osavytska@llrlaw.com
hlichten@llrlaw.com

*Attorneys for Plaintiff and the Proposed Collective*


12